**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

ERIN LIVESAY,

   Plaintiff,

  v.          CAUSE NO.: 4:22-CV-19-TLS

NATIONAL CREDIT SYSTEMS, INC.,

   Defendant.

**OPINION AND ORDER**

This case arises out of credit reporting and debt collection activities by Defendant

National Credit Systems, Inc. related to the Housing Agreement that the Plaintiff Erin Livesay

signed with Copper Beach Townhome Communities Eight, LLC while a student at Purdue

University. This matter is before the Court on: (1) the Plaintiff's Motion for Partial Summary

Judgment [ECF No. 77]; (2) the Defendant's Motion for Summary Judgment [ECF No. 78]; (3)

the Defendant's Motion to Strike Portions of Plaintiff's Motion for Summary Judgment [ECF

No. 82]; and (4) the Defendant's Motion to Seal Confidential Contract [ECF 96]. These motions

are briefed and ripe for ruling.

**MOTION TO SEAL**

First, the Court addresses the Defendant's Motion to Seal Confidential Contract [ECF

96]. On December 4, 2023, the Plaintiff filed a Motion to Permit Temporary Filing Under Seal

[ECF No. 94], asking the Court to order that the Plaintiff's Exhibit 4 [ECF No. 92]—which is a

service agreement between the Defendant and its client Copper Beech—filed on November 27,

2023, be maintained temporarily under seal. The Court entered a December 4, 2023 Order [ECF

No. 95] granting the Plaintiff's Motion to Permit Temporary Filing Under Seal, further providing

that if no motion to seal is filed by December 11, 2023, the Court will unseal Exhibit 4. In the

instant motion, the Defendant asks the Court to order that Exhibit 4 [ECF No. 92] be maintained under seal because it contains competitive pricing information between the Defendant and its client, and it also contains details about the terms of the services negotiated between the Defendant and its client, which have competitive value and are not generally known to the public or the Defendant's competitors. The Defendant also provides a redacted version of Exhibit 4, which redacts the competitive pricing information and details about the terms of service from the Service Agreement. *See* Ex. 1, ECF No. 96-1.

Northern District of Indiana Local Rule 5-3 provides, "The clerk may not maintain a filing under seal unless authorized to do so by statute, court rule, or court order." N.D. Ind. L.R. 5-3(a). "The public has a legitimate interest in the record compiled in a legal proceeding because the public pays for the courts," but this interest may be overridden "if there is good cause for sealing part of the record." *Forst v. Smithkline Beecham Corp.*, 602 F. Supp. 2d 960, 974 (E.D. Wis. 2009) (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944–45 (7th Cir. 1999)). "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification" by the Court. *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006). Therefore, "the district court [must] make a determination of good cause before [it] may enter [an] order [to seal]." *Citizens First*, 178 F.3d at 946. Consequently, a litigant must justify the claim of secrecy, analyzing the applicable legal criteria. *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002).

In this case, the Court finds that the Defendant has established good cause to maintain the Plaintiff's Exhibit 4 [ECF No. 92] containing the Service Agreement between the Defendant and its client Copper Beech under seal and that its redactions are appropriate. Thus, the Court grants the Defendant's motion to seal and will direct the Clerk of Court to file the redacted exhibit.

2

## BACKGROUND AND MATERIAL FACTS[1]

### A.     The Parties, the Housing Agreement, and the Alleged Debt

The Plaintiff, Erin Livesay, signed a Housing Agreement with Copper Beech Townhome Communities Eight, LLC (Copper Beech) on October 22, 2018, to rent an apartment she had hoped to live in with roommates while she attended Purdue University. ECF No. 80-2, p. 3; ECF No. 81-23, ¶ 1.[2] Under the Housing Agreement, Copper Beech would provide a residence to the Plaintiff, and she would pay $439.00 monthly. ECF No. 80-2, p. 3. Its term was from August 17, 2019, through August 2, 2020, and the Plaintiff's total for rent was $5,268.00, plus an administrative fee of $50.00 for a grand total of $5,318.00. *Id.*

The Housing Agreement also required the Plaintiff to make a prepayment of the final two-month's payments—totaling $878.00—before moving in. *Id.* Alternatively, it waived that payment if she had a guarantor with a "baseline income" sign the Housing Agreement. *Id.* However, the Plaintiff did not make that $878.00 pre-payment, and she did not have a "guarantor that Copper Beech deemed acceptable." ECF No. 78-5, pp. 82–83. Consequently, the Plaintiff never moved into the Copper Beech apartment. ECF No. 81-23, ¶ 2.

With no payments from the Plaintiff, Copper Beech placed her account with the Defendant, National Credit Systems, Inc. (NCS)—a third-party debt collector that collects debts from parties who allegedly breached lease agreements, for collection. ECF No. 78-13, ¶¶ 4, 11–12.[3] The Defendant reported the Plaintiff's alleged debt to Copper Beech to consumer reporting

---

[1] The Court disregards substantive arguments and characterization of evidence in the fact statements and considers the facts only as supported by the cited evidence of record.

[2] The Plaintiff failed to sequentially label her exhibits either with numbers or letters and then filed the 43 exhibits over two docket entries, resulting in duplicative numbering. *See* ECF Nos. 80, 81. As a result, the Court refers to the Plaintiff's exhibits by their ECF number.

[3] Ron Sapp, the Defendant's Vice President of Operations, provided a declaration including information on the Defendant's collection policies, practices, and procedures, and on the Plaintiff's account with the Defendant. ECF No. 78-13, ¶ 2.

agencies (CRAs). *See, e.g.*, ECF No 81-15, p. NCS417. CRAs include Experian, Equifax, and TransUnion. Def. ECF No. 78-13, ¶ 3.

**B.    The Defendant's Policies and Procedures for Responding to Consumer Disputes**

The Defendant receives indirect disputes made to the CRAs by consumers, such as the Plaintiff, known as automated consumer dispute verifications (ACDVs), through the Metro2 e-Oscar system used by the CRAs. *Id*. For each of these disputes where the Defendant is the debt collector, the CRA reviews the consumer dispute, determines the appropriate "dispute code" from a list of e-Oscar dispute codes, and then submits the ACDV to the Defendant for a response. *Id.* ¶ 10. If the consumer attaches relevant documents or information to support the dispute to the CRAs, then the CRAs will typically include a description of the dispute and/or images from the consumer's dispute when submitting the ACDVs. *Id*. The Defendant investigates these indirect disputes with the assistance of an independent contractor—Provana. *Id*. ¶¶ 8, 10. However, when the Defendant receives disputes directly from consumers, it uses its own internal investigation team. *Id*. ¶ 9.

It is the Defendant's policy to conduct an investigation when a dispute is received, regardless of whether it is a direct dispute to the Defendant or an indirect dispute received through an ACDV from a CRA. *Id.* ¶ 5. Also, it is the Defendant's policy to only provide accurate information to the CRAs. *Id*. In support of these policies, the Defendant has a contractual agreement with its clients requiring that they not turn over any debt with inaccurate information. *Id.* ¶ 6. The client must also provide confirmations that the debt is valid, that the responsible party is correct, and that the amount placed is correct. *Id*. The agreement further requires that the client bear any costs resulting from inaccurate information being placed with the Defendant. *Id*.

4

Additionally, upon placement of a debt, it is the Defendant's policy and procedure to send an acknowledgment to the creditor containing the relevant account information, including the identity of the responsible parties and the amount of debt placed with the Defendant. *Id*. The Defendant also asks the creditor to review the information, ensure the accuracy and validity of the debt, and notify the Defendant if the amount of the debt changes. *Id*. After placement, it is the Defendant's policy and procedure to send out a letter to the consumer giving an appropriate amount of time to dispute the debt. *Id*. ¶ 7.

The Defendant trains its investigators and provides guidance on how to conduct investigations. *Id*. ¶ 8. The Defendant works with Provana to ensure that its dispute investigations have a maximum possible accuracy. *Id*. For contractors hired as specialists for investigations, such as Provana, the investigators receive additional training from Provana, beyond using the Defendant's policies and procedures. *Id*. For example, Provana and the Defendant have weekly video calls to discuss the status of disputes, including work-flow, policy issues, policy updates, changes to procedures, and other updates. *Id*. Additional calls are set up as needed to address specific investigations, such as when additional information is needed from the creditor. *Id*.

When the alleged debtor claims that the balance is not owed, the Defendant's personnel and the Provana independent contractors are to review the following:

> (1) the dispute code which is used to guide the investigation, (2) the account status code, (3) the account notes for the subject account which will include notes on the investigation of any previous disputes, communications between [the Defendant] and the debtor, and communications between [the Defendant] and the creditor, (4) the documents in [the Defendant's] batch file for the subject debt such as the lease, final account statement, and any tenant ledger, (5) any reasons for the dispute as supplied by the ACDV, and (6) any documents provided by the alleged debtor included with the ACDV, as well as previous documents supplied by the alleged debtor to [the Defendant], all of which are kept in [the Defendant's] batch file for the subject account.

*Id*. ¶ 10.

When the alleged debtor claims they have a judgment in their favor on the account,

Provana employee Himanshu Kumar testified that the investigator

> should go to the original creditor on WinDebt, and . . . would look at the proof that
> has been provided. There would be a specific code about if that account is ended or
> it has been closed. If the account shows it is still open, then [the investigator] [goes]
> . . . to [the] original creditor, and . . . send[s] them the report to verify [what] has
> been received. If the report judgment is in favor of [the] consumer, [the
> investigator] would send it to the original creditor to verify if it is . . . true or not.

ECF No. 78-11, pp. 7, 51–52.

**C.      Pre-Judgment Disputes**

As for the disputes in this case, on April 10, 2020, the Plaintiff sent Experian a dispute

about the Defendant's credit reporting, and Experian sent the Defendant a corresponding ACDV.

ECF No. 80-10; ECF No. 81-23, ¶ 7. In response, on April 27, 2020, the Defendant confirmed

the balance and past due amount of $5,318.00. ECF No. 80-11.

On July 7, 2020, the Defendant received a dispute letter dated June 26, 2020, directly

from the Plaintiff that recounted her dealings with Copper Beech. ECF No. 78-6. Among other

things, that letter stated as follows:

> I did not sign a LEASE agreement nor do I have any copies that were sent to me
> via email or emails containing a confirmation that I signed a lease or housing
> agreement at that time (a copy of the Housing Agreement that I signed was sent to
> me for the first time after requesting it on 6/25/2020) I did not send a "signed
> Guaranty from an acceptable guarantor or prepayment of the final two installments"
> before November 26, 2018. . . .
> . . . I was an unemployed college student at that time, so my only option to
> financially qualify for the apartment was to have a guarantor, which was denied
> because my guarantor did not make 5x the rent. I did not have another guarantor
> option.

*Id.*, pp. 3–4. As a result of receiving that letter, the Defendant's employees, Amanda Hansen (a

dispute resolution manager) and Jenna Vining, reached out to Copper Beech, which confirmed

that the Plaintiff owed the alleged debt. ECF No. 78-13, ¶ 12, Ex. 1, p. 12 of 128. On August 3,

2020, Kaitlyn Landis from Copper Beech responded:

> I apologize for the delay as I have been out sick for the past month and a half. Erin Livesay did sign a housing agreement with us—in the agreement it states even if they are unable to qualify they are still legally responsible for the entire agreement term. The amount listed is correct—If you need any additional information please let me know!

ECF No. 78-13, ¶ 12, Ex. 1, p. 13 of 128. On August 3, 2020, the Defendant then mailed account documentation to the Plaintiff, notifying her that it had investigated the dispute but there was insufficient evidence to validate her claims and attaching Copper Beech's letter with a final account statement, ledger, and the Housing Agreement. ECF No. 78-7, p. 1.

On June 11, 2021, the Plaintiff sent Experian another dispute about the Defendant's credit reporting, and Experian sent the Defendant a corresponding ACDV. ECF No. 80-13; ECF No. 81-23, ¶ 7. In response, on July 7, 2021, the Defendant confirmed the balance and past due amount of $5,318.00. ECF No. 80-14.

## D.    Indiana State Court Lawsuit and Judgment Against Copper Beech and in the Plaintiff's Favor

On May 26, 2021, the Plaintiff sued Copper Beech in Indiana state court in Tippecanoe County for a declaratory judgment that she owed nothing under the Housing Agreement. ECF No. 80-2; ECF No. 81-23, ¶ 11. On June 10, 2021, Copper Beech filed a counterclaim for attorney fees. ECF No. 80-3. After a trial, on July 23, 2021, the Indiana state court rendered a declaratory judgment against Copper Beech and in favor of the Plaintiff that she did not owe the $5,318.00 to Copper Beech. ECF No. 80-1.

## E.    Post-Judgment Disputes

On July 23, 2021, the Plaintiff sent a dispute to each of Equifax, Experian, and TransUnion attaching "all of the exhibits [she] gave the Tippecanoe Court and [the] order." ECF No. 81-23, ¶ 13; *see* ECF No. 81-2; ECF No. 81-7; ECF No. 80-16. On August 16, 2021, the Defendant received notice of the Plaintiff's dispute in an ACDV from Equifax. ECF No. 81-13, p. NCS285. In response, the Defendant noted that it updated the account with additional

7

information, included that the balance owed was $5,318.00, and noted that the Plaintiff disputed the current balance and disagrees with the completed investigation. ECF No. 81-8.

On August 18, 2021, the Defendant received notice from Copper Beech that the Plaintiff's balance should be $0.00 and an updated ledger. ECF No. 78-12, pp. 68; ECF No. 78-13, ¶¶ 2, 16. The same day, the Defendant authored a letter to the Plaintiff explaining that it planned to send a deletion request:

> The above referenced account has been cancelled by our client.
>
> National Credit Systems, Inc. will no longer pursue the recovery of this account. We will request that any derogatory credit listing made by this agency in connection with this account be removed.
>
> Please contact our office if you have any questions concerning this matter.

ECF No. 78-13, ¶ 16, Ex. 3, p. 96 of 128.

On August 23, 2021, the Defendant received notice of the Plaintiff's dispute in an ACDV from Experian. ECF No. 81-14, p. NCS362. In response, the Defendant confirmed the alleged debt was owed. ECF No. 80-17.

On August 26, 2021, the Defendant sent a "DA" code to the CRAs (Experian, TransUnion, and Equifax) to "delete" the account from the Plaintiff's consumer report and sent the code again on September 10, 2021, and on subsequent transmissions. ECF No. 78-12, p. 68; ECF No. 78-13, ¶ 17, Ex. 4, pp. 97–103 of 128.

On August 23, 2021, the alleged debt was still reporting on the Plaintiff's TransUnion credit report. ECF No. 81-4, p. 4. And, on August 28, 2021, the alleged debt was still reporting on the Plaintiff's Experian credit report. ECF No 81-15, p. NCS417.

**F.    Defendant's Post-Judgment Responses**

As to the Defendant's responses to disputes received from Equifax and Experian in August 2021, Mr. Sapp explained that the Provana investigators responded with e-Oscar dispute

8

response codes of "22" and "23," which verify the debt. ECF No. 78-13, ¶ 18. However, he said that these investigation conclusions were erroneous. *Id*. This was because the account was in recall status, and the investigators should have responded with a "3" to delete account. *Id*. For the response to Equifax, the response occurred before the account status was changed. *Id*. For the response to Experian, the response was not in accordance with the Defendants' policies, which require accounts to be deleted from credit reporting that the creditor has recalled, which occurred in this instance. *Id*.

### G.    Impact of the Continued Reporting on the Plaintiff

As to the continued reporting on her credit reports post-judgment, the Plaintiff stated:

> [W]hen I got a letter back from the credit reporting agency indicating the reporting was continuing, I immediately considered my options of what I could do to get the debt off of my credit report. Would [the Defendant] accept a settlement? Could I set up a payment plan? How long of a payment plan could I qualify for without tacking on a bunch of interest? Is there a family member I could borrow money from? Could anyone help me pay this off? When I got [the Defendant's] settlement letter offering for me to pay half, I felt the same way, wondering how I could possibly pay this huge amount.

ECF No. 81-23, ¶ 14.

### H.    Final Post-Judgment Dispute

On September 21, 2021, the Plaintiff sent another dispute to Experian. ECF No. 81-14, p. NCS389. On October 6, 2021, Experian sent the Plaintiff a letter notifying her that the alleged debt owed to Copper Beech was deleted from her credit report. ECF No. 81-1.

### I.    Instant Lawsuit

On January 1, 2022, the Plaintiff filed a Complaint in the Tippecanoe County, Indiana, Circuit Court, which the Defendant removed to this federal court on March 7, 2022. ECF Nos. 1, 5. In her Complaint, the Plaintiff alleges that the Defendant inaccurately reported that she owed the $5,318.00 to CRAs Experian, Equifax, and Transunion, which she disputed with supporting documentation to each of the CRAs in April 2021, July 2021, and September 2021, and that the

9

CRAs notified the Defendant about her disputes through ACDVs. Compl. ¶¶ 6–11, 20–22, 32–34.

She also alleges that the Defendant did not conduct a reasonable investigation in response to each of the disputes. *Id*. ¶¶ 16, 27, 39. She claims that the Defendant did not review the relevant information that she provided. *Id*. ¶¶ 17, 28, 40. She also claims that at the time of each dispute, she did not owe anything on the account to the Defendant. *Id*. ¶¶ 15, 26, 38. She further alleges that the Defendant failed to report to the CRAs that the reporting was inaccurate or incomplete. *Id*. ¶¶ 18, 29, 41.

As a result, the Plaintiff alleges that the Defendant falsely represented the legal status of the debt and attempted to collect an amount of money from the Plaintiff that is not permitted by law. *Id*. ¶ 61. She contends that the Defendant's conduct was unfair. *Id*. ¶ 67. She also contends that the Defendant communicated with CRAs when the communication was illegal. *Id*. ¶ 68. She alleges that the Defendant made false, deceptive, and misleading representations when it falsely represented the Plaintiff owed money, communicated information to CRAs that the Defendant knew to be false and incomplete, and falsely represented debt was owed to the Defendant. *Id*. ¶ 72. And, the alleged debt that the Defendant attempted to collect was not authorized by any agreement or permitted by law. *Id*. ¶ 73.

## SUMMARY JUDGMENT ANALYSIS

### A.    Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's

claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

**B.      Defendant's Motion for Summary Judgment**

The Defendant moves for summary judgment on the Plaintiff's Fair Credit Reporting Act (FCRA) claim under 15 U.S.C. § 1681s-2(b)(1).[4] Congress enacted the "FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Section 1681s-2(b)(1) provides:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>    (A) conduct an investigation with respect to the disputed information;
>    (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>    (C) report the results of the investigation to the consumer reporting agency;
>    (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person

---

[4] As elaborated on below in the Section on the Motion to Strike, although the Defendant represents in its Motion to Strike that it understood the Plaintiff's Complaint to be bringing only a claim under the FCRA, the Court finds that the Plaintiff's Complaint alleges claims under both the FCRA and the Fair Debt Collection Practices ACT (FDCPA).

> furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). Thus, "[t]hat statute . . . requires a data furnisher to investigate and review disputed information forwarded by a credit reporting agency for completeness and accuracy, and then send verified or amended data back to the agency." *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023).

In support of dismissing the FCRA claim, the Defendant argues that the Plaintiff cannot show the Defendant failed to conduct a reasonable investigation before or after the Indiana state court entered a judgment in the Plaintiff's favor and that the enforceability of the Plaintiff's contract with Copper Beech was not an alleged factual inaccuracy but instead constituted a disputed legal question the Defendant was not required to investigate. The Defendant also raises four arguments related to damages. Because the Defendant's argument on the reasonableness of the investigation is dispositive, the Court need not address the Defendant's other arguments.

"Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)); *see Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018) (relying on the *Westra* standard to grant a defendant's motion for summary judgment on a § 1681s-2(b)(1) claim); *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022) (relying on *Westra* for the same); *Crabill*, 259 F.3d at 664 ("It therefore cannot be resolved on summary judgment unless the reasonableness or

unreasonableness of the procedures is beyond question."). "What counts as a reasonable investigation depends on the content of the ACDV the [defendant] receives" relative to the procedures that the defendant follows in carrying out its investigation. *Woods*, 27 F.4th at 550; *see* 12 C.F.R. § 1022.42(a) ("Each furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency. The policies and procedures must be appropriate to the nature, size, complexity, and scope of each furnisher's activities.").

The Seventh Circuit Court of Appeals has adopted other federal circuit courts' interpretation of § 1681s-2, which includes the following two threshold requirements:

> 1. The plaintiff must make a prima facie showing that the data furnisher provided incomplete or inaccurate information.
>
> 2. The plaintiff must also show that the incompleteness or inaccuracy was the product of an unreasonable investigation—that is, had the furnisher conducted a reasonable investigation, it would have discovered that the data it provided was incomplete or inaccurate.

*Frazier*, 72 F.4th at 775 (citing cases). Simply put, "[e]stablishing an inaccuracy is not enough, however; [the plaintiff] must also show that the inaccuracy was the product of an unreasonable investigation by [the furnisher]." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1252 (9th Cir. 2022); *see Frazier*, 72 F.4th at 776 n.3 (relying on *Gross* among other cases in adopting the two threshold requirements for a claim under 15 U.S.C. § 1681s-2).

As a threshold matter, the Plaintiff asserts that "the reporting of inaccurate information gives rise to a permissive inference that a furnisher's investigation was unreasonable," but cites out-of-circuit and pre-*Frazier* cases. Pl. Resp. 10, ECF No. 88. Based on *Frazier*'s two threshold requirements for a § 1681s-2 claim as set forth above, such an inference renders the second threshold requirement superfluous and ignores the definition of a reasonable or unreasonable investigation involving disproportionality as stated in *Woods*, 27 F.4th at 550, which are binding

precedent. Because the Defendant moves for summary judgment on the § 1681s-2 requirement of an unreasonable investigation—which the Plaintiff has the burden of establishing at trial, to stave off summary judgment on her § 1681s-2 claim, the Plaintiff must point to evidence showing that the Defendant's investigations were unreasonable in that they were disproportionate to the content of the disputes that the Plaintiff sent to the CRAs. *See Woods*, 27 F.4th at 550; *Frazier*, 72 F.4th at 775.

Here, the Defendant argues that the Plaintiff only intends to show that the results of its investigation were incorrect; and in its reply, the Defendant argues that the Plaintiff failed to meet her burden to show that its investigation was unreasonable because she failed to provide a single citation to the record in her response memorandum. The Court agrees with the Defendant that the Plaintiff has not met her burden for the reasons set forth below.

Mainly, "the obligation of the party opposing summary judgment is to demonstrate that there are one or more . . . factual disputes, by identifying admissible evidence that would permit the trier of fact to make a finding in the non-movant's favor as to any issue as to which it bears the burden of proof." *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 845, 847–48 (7th Cir. 2015) (citing cases) (holding that the district court properly entered summary judgment against the plaintiff when "her counsel below did not properly support the elements of her claims with specific citations to admissible record evidence"). The non-movant accomplishes this by "citing to particular parts of materials in the record" containing such evidence. Fed. R. Civ. P. 56(c)(1)(a). "[The Seventh Circuit] [has] long sustained 'the exacting obligation' such rules impose on the party contesting summary judgment to identify and guide the court to the specific evidence on which it is relying to show that a trial is required." *Packer*, 800 F.3d at 848 (citing cases).

In this case, in her memorandum in response to the Defendant's summary judgment brief, the Plaintiff asserts that the following establish that the Defendant's investigation was unreasonable:

- Himanshu Kumar, an employee of Provana (a company that addresses disputes for the Defendant), stated unambiguously that he had no recollection of Ms. Livesay's disputes or what he did to investigate them;
- Mr. Kumar shared that his efforts would not have included any inquiry into whether the underlying debt was owed;
- The Plaintiff informed the Defendant that she had never actually lived in the premises, and Copper Beech had refused to allow her to take tenancy of the premises;
- Even though Mr. Kumar received other similar disputes, the Defendant provided no training to properly investigate because the Defendant and Provana provided no training in landlord-tenant law;
- Mr. Kumar had no background to understand the legal consequence of Copper Beech's refusal to allow Ms. Livesay take possession of the premises;
- The Plaintiff had provided the Defendant with evidence that Copper Beech had provided unreliable information to the Defendant;
- Even though Copper Beech later confirmed the Plaintiff's version of the facts, the Defendant still refused to correct its reporting;
- Ron Sapp, Vice President of Operations for the Defendant, testified that Mr. Kumar and other Provana agents in India had handled disputes for the Defendant, and his testimony on how Provana handled the disputes is based on hypotheticals;
- Mr. Kumar had no discretion to conduct an actual investigation; and
- The Defendant's policies rendered Mr. Kumar's conclusions foregone conclusions based on the limitations placed on him.

ECF No. 88 at 11–12.[5] However, although the Plaintiff filed a Response to the Defendant's Statement of Material Facts including an Additional Facts section with citations to the record,

---

[5] To the extent that the Plaintiff argues in a footnote that Mr. Sapp's declaration is inadmissible because it relies on hearsay, any such argument is waived because she did not develop the argument in her response or cite to the specific parts of the declaration that she asserts constitute hearsay. *See* N.D. Ind. LR 56-1(f) ("Disputes about the admissibility or materiality of evidence must be raised in the parties' *briefs*.").; *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). To the extent that the Plaintiff raises evidentiary objections to Mr. Sapp's declaration and testimony in her fact statements, the purpose of Northern District of Indiana Local Rule 56-1 on fact statements is to identify the relevant evidence that supports the material facts, not to raise evidentiary objections. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006); N.D. Ind. LR 56-1(f). Thus, the Court will not address the Plaintiff's evidentiary objections made in her fact statements. *See* N.D. Ind. LR 56-1(f).

ECF No. 89, in her response memorandum, the Plaintiff failed to provide a single citation to either her Response to the Defendant's Statement of Material Facts, her Additional Facts, or directly to the record in support of any of the facts she listed. "A district court may reasonably expect a party opposing summary judgment to lay out its case thoroughly and include in its memorandum cites to the specific parts of the record confirming that there are genuine disputes of material fact which require the case to be tried." *Packer*, 800 F.3d at 853. Here, the Court exercises its discretion to not launch its own search of the record for the facts set forth in the Plaintiff's response memorandum. Thus, the Plaintiff has not met her burden to establish that the Defendant's investigation was unreasonable because she did not provide citations to the record for the facts asserted in her response memorandum, making "[t]his case . . . yet another cautionary tale about the consequences of not properly responding to a motion for summary judgment." *Id*. at 845.

Even if the Plaintiff had cited to the record and established the facts she asserted, the Plaintiff still would not have met her burden to show that the Defendant's investigations were unreasonable.[6] The Plaintiff essentially argues that the Defendant's investigations were unreasonable because, at most, the Defendant investigated by contacting Copper Beech "to verify the information" that the Plaintiff disputed. Pl. Resp. 11, ECF No. 88. In support, the Plaintiff cites *Carlisle v. National Community Services, Inc.*, No. 1:14-CV-515, 2015 WL 4092817, at *14 (N.D. Ga. July 7, 2015), for the proposition that the Defendant's investigation, comprised merely of confirming with Copper Beech the amount owed, was insufficient.

In *Carlisle*, the court considered whether the defendant had a meritorious defense to the plaintiff's 15 U.S.C. § 1681s-2 claim on a motion to vacate default; the court did not consider a

---

[6] Solely for purposes of this analysis, the Court assumes, without deciding, that the Plaintiff could establish these facts regarding the Defendant's investigations for which she does not cite the record.

16

plaintiff's burden in opposition to summary judgment. *See id.* at *7. There, the defendant's meritorious defense argument was that "it reasonably investigated . . . the dispute because after receiving notification of the dispute, it confirmed with the creditor that the amount being demanded was the amount owed and verified to the consumer reporting agencies that the balance was being reported correctly." *Id.* at *14. The *Carlisle* court reasoned that, although "[it] could certainly imagine circumstances in which contacting [the creditor] could amount to a reasonable investigation of the dispute, [the Defendant] does not offer sufficient facts for the [c]ourt to so conclude in this case." *Id.* This was because "[t]he pertinent question [was] whether a furnisher's investigation procedures were reasonable in light of what the credit reporting agencies told it about the nature of the dispute." *Id.*

The *Carlisle* court also explained that "[m]erely confirming the amount owed with [the creditor] may not be sufficient under every circumstance." *Id.* However, it "may be appropriate where the consumer reporting agencies provide the furnisher with vague or cursory information about a consumer's dispute." *Id.* But "the manner in which [the furnisher] contact[s] [the creditor] may play a part in whether [the furnisher's] investigation was reasonable." *Id.* "[The furnisher] would have a duty to report to [the creditor] the nature of the dispute as reported to [it] by the credit reporting agencies." *Id.* As a result, the court concluded that, in order for the defendant to have established that its defense was meritorious, "more information [was] needed . . . to determine whether [the furnisher's] confirmation with [the creditor] that the amount demanded was the amount owed was sufficient." *Id.*

Unlike in *Carlisle*, which involved a motion to vacate default requiring the defendant to show it had a meritorious defense, in this case, the Plaintiff has the burden of establishing that the Defendant's investigation was unreasonable because she carries the burden at trial. *See Frazier*, 72 F.4th at 775; *Pulera v. Sarzant*, 966 F.3d 540, 549 (7th Cir. 2020) ("At summary

judgment, the nonmovant plaintiff must provide evidence that, when viewed in the light most favorable to [her], suffices to prove every element of [her] claim for which [she] bears the burden of proof. If the plaintiff fails to show at least a triable issue on each element, summary judgment is properly entered for the defendant[]." (cleaned up)).

The Plaintiff here needs to point to evidence in the record that establishes: (1) what the credit reporting agencies told the Defendant about the Plaintiff's disputes; (2) the manner in which the Defendant contacted Copper Beech about those disputes; (3) and that those two were disproportionate, which also complies with the standard of the Seventh Circuit Court of Appeals. *See Woods*, 27 F.4th at 550; *Westra*, 409 F.3d at 827; *Frazier*, 72 F.4th at 775. The problem though is that the Plaintiff does not make an argument under the Seventh Circuit standard to explain why a factfinder might be able to conclude that the Defendant had conducted an unreasonable investigation. This is because she does not compare what the credit reporting agencies told the Defendant about the Plaintiff's disputes with the manner in which the Defendant contacted Copper Beech or even the manner in which the Defendant's policy specifies that it contact Copper Beech under the circumstances. *See Packer*, 800 F.3d at 852; *Woods*, 27 F.4th at 550; *Westra*, 409 F.3d at 827.

In fact, as the Defendant highlights in its reply, the Plaintiff implies that she does not have evidence relating to the Defendant's investigation of the disputes at issue by relying on the testimony of Mr. Kumar that he had no recollection of what he did to investigate the Plaintiff's disputes. She also does not show that the Defendant did not contact Copper Beech to verify the information in the disputes. Nor does she ground the facts that she points to in the pertinent case law because, although she cites several cases, most are not binding precedent and she provides

no analysis. *See Packer*, 800 F.3d at 852. "In short, [the Plaintiff's] cursory treatment of the . . .

claim was wholly insufficient . . . ." *Id.*; *see Mahaffey*, 588 F.3d at 1146.[7]

Accordingly, the Court grants summary judgment in favor of the Defendant on the

Plaintiff's 15 U.S.C. § 1681s-2 claim.

**C.      Plaintiff's Motion for Partial Summary Judgment**

*1.      Fair Credit Reporting Act*

The Plaintiff moves for summary judgment on her FCRA claim under 15 U.S.C. § 1681s-

2 on only the first *Frazier* element, arguing that there is no genuine dispute that the Defendant

provided inaccurate or incomplete information to the credit reporting agencies. *See Frazier*, 72

F.4th at 775. However, because, as set forth in Section B above, the Court is granting summary

judgment for the Defendant on this claim based on the second *Frazier* element, the Court denies

the Plaintiff's motion as to her 15 U.S.C. § 1681s-2 claim.

*2.      Fair Debt Collection Practices Act*

The Congressional purpose of the Fair Debt Collection Practices Act (FDCPA) is "to

eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors

who refrain from using abusive debt collection practices are not competitively disadvantaged,

and to promote consistent State action to protect consumers against debt collection abuses." 15

U.S.C. § 1692(e). Thus, the FDCPA "is designed to protect consumers from abusive and unfair

debt collection practices." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320 (7th

Cir. 2016). Consequently, the FDCPA, among other things, "restricts whom a debt collector may

contact regarding a debt . . . and bans the use of false, deceptive, misleading, unfair, or

---

[7] To the extent that the Plaintiff asserts that she may satisfy her burden to show that the Defendant's investigation was unreasonable by showing that it "was aware of the inaccuracy and continued to report the disputed information," Pl. Resp. 10, the Court need not address her assertion because she does not develop it.

unconscionable means of collecting a debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (cleaned up).

To prevail on her FDCPA claim, "[the Plaintiff] must prove that (1) [the Defendant] qualifies as a 'debt collector,' (2) that [the Defendant] took the actions [she] complains of 'in connection with the collection of any debt,' and that (3) those actions violated one of the FDCPA's substantive provisions." *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1311 (7th Cir. 2025) (quoting *Gburek*, 614 F.3d at 384). Here, because it is undisputed that elements one and two are satisfied, the Court only addresses the third.

Under the third element, the Plaintiff asserts that the Defendant violated the following substantive provisions of the FDCPA: (1) 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. §1692e(8); (2) 15 U.S.C. § 1692f(1); and (3) 15 U.S.C. § 1692c(b). Thus, the Court addresses in turn whether the Plaintiff has established a violation of any of those substantive provisions of the FDCPA.

a.    15 U.S.C. §1692e(2)(A) and 15 U.S.C. §1692e(8)

Section 1692e(2)(A) and (8) provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
>     (2) The false representation of–
>         (A) the character, amount, or legal status of any debt;
> . . .
>     (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. §§ 1692e(2)(A), (8). However, such communication does not "automatically violate[] the FDCPA." *Ruth v. Triumph P'ships*, 577 F.3d 790, 799 (7th Cir. 2009) (discussing *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643 (7th Cir. 2009)).

20

"If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA." *Wahl*, 556 F.3d at 645–46 (explaining that "Wahl can't win simply by showing that Midland's use of the term 'principal balance' is false in a technical sense" rather "she has to show that it would mislead the unsophisticated consumer"); *see Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("Moreover, our test for determining whether a debt collector violated § 1692e is *objective*, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." (emphasis added)). "The 'unsophisticated consumer' isn't a dimwit. She may be uninformed, naive, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl*, 556 F.3d at 645 (cleaned up). Thus, a consumer cannot "prevail in the district court simply by proving that statements . . . were false. Whether they were false or not, she [has] to prove that an unsophisticated consumer would be deceived or misled by them." *Ruth*, 577 F.3d at 800.

In this case, the Plaintiff argues that the Defendant violated 15 U.S.C. §1692e(2)(A) and 15 U.S.C. §1692e(8) when, after the state court judgment declaring that she did not owe the debt, the Defendant continued reporting the debt at issue to CRAs and when the Defendant sent her a settlement offer letter because those communications confused her into believing she had to pay to remove the adverse tradeline from her credit file. In support, the Plaintiff cites her declaration in which she described how a letter from a CRA indicating that the continued reporting of the debt at issue and a settlement offer letter from the Defendant—received after the Indiana state court judgment was entered in her favor—mislead her into thinking she still had to pay the debt

21

at issue.[8] The Court finds the Plaintiff's argument unpersuasive because it is not supported by evidence showing the unsophisticated consumer would have believed the same.

A plaintiff's "own self-serving" declaration fails to show that "a significant fraction of the population would have believed the same thing after" receiving those communications when a declaratory judgment from a state court stating the debt was not owed had already been entered. *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1061–62 (7th Cir. 2000). The Seventh Circuit Court of Appeals "[has] advised litigants on several occasions that this feat might be accomplished through the use of survey evidence, but [the Plaintiff] elected not to take this route." *Id.* at 1062 (cleaned up). Because "[t]he self-serving opinion of the [P]laintiff, clearly not an expert or an objective observer," does not create a genuine dispute of fact for trial, the Court concludes that the Plaintiff has not met her burden to show that the Defendant violated § 1692e. *Id.*

b.      15 U.S.C. § 1692f(1)

Section 1692f(1) prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt" including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). "Whether the collection of a debt violates § 1692f(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law." *Turner*, 330 F.3d at 996. However, "a debt collector [that] unlawfully attempts to collect a debt that is . . . unenforceable" does not use "an unfair or unconscionable means of debt collection under § 1692f, even when the debt collector may have violated some

---

[8] In her brief, the Plaintiff does not cite to the letter from the CRA or the settlement letter from the Defendant to which she refers.

other provision of the FDCPA." *Id*. at 998. Thus, a debt collector does not violate § 1692f(1) by merely attempting to collect an unenforceable debt. *See id*.

In this case, the Plaintiff argues that the Defendant violated § 1962f(1) "by attempting to collect an amount which is not expressly authorized or permitted by law" because the Defendant falsely communicated with CRAs that the Plaintiff owed the debt at issue after the Indiana state court judgment in her favor saying she did not owe the debt. Pl. Br. 10, ECF No. 79. As a result, the Court finds that the Plaintiff attempts to establish that the Defendant violated 15 U.S.C. § 1692f(1) by merely showing that the Defendant attempted to collect an unenforceable debt. Thus, the Court concludes that the Plaintiff has not established that the Defendant violated 15 U.S.C. § 1692f(1) as a matter of law. *See Turner*, 330 F.3d at 998.

c.        15 U.S.C. § 1692c(b)

Section 1692c(b) provides:

> [W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). Given the clear statutory language, any communication by the Defendant to a CRA regarding the debt in question would not violate § 1692c(b) unless the Plaintiff shows that the Defendant's communication is not "otherwise permitted by law." *See id*. § 1692c(b).

Here, the Plaintiff argues that "[b]y communicating to both Plaintiff and CRAs] that [the] debt was owed, [the Defendant] communicated information which it should have known to be false and communicated to a CRA when the law prohibited such communication, violating 15 U.S.C. § 1692c(b)." Pl. Br. 10, ECF No. 79 (cleaned up). However, as set forth above, the Plaintiff has not otherwise established that the Defendant's communication was unlawful because she has not established that the Defendant violated the FDCPA under § 1692e or

§ 1692f, nor does she suggest any other violations of law in her arguments under her FDCPA claims. Thus, the Court concludes that the Plaintiff has not established that the Defendant violated § 1692c(b).

Accordingly, the Court denies the Plaintiff's motion for partial summary judgment on the Plaintiff's FDCPA claims because the Plaintiff has not established that the Defendant violated 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(8), 15 U.S.C. § 1692f(1), or 15 U.S.C. § 1692c(b). Thus, the Court need not address the parties' arguments on the Defendant's bona fide error defense or the Defendant's argument that the Plaintiff's Indiana state court judgment was void ab initio. The Plaintiff's FDCPA claims remains pending.

## MOTION TO STRIKE

Lastly, the Court addresses the Defendant's Motion to Strike Portions of Plaintiff's Motion for Summary Judgment [ECF No. 82]. The Defendant contends that the Court should strike the portion of the Plaintiff's Motion for Partial Summary Judgment [ECF No. 77] pertaining to her claims under the FDCPA because no such claims were articulated in the Plaintiff's Complaint or in her response to Interrogatory No. 5, resulting in unfair surprise and prejudice. The Court disagrees for the following reasons.

First, although the Defendant is correct in that the Plaintiff did not identify the statutes she is bringing her claims under in response to the Defendant's Interrogatory No. 5, the Defendant did not file a motion to compel a response. *See* Fed. R. Civ. P. 37.

Second, in her response to the Defendant's motion to strike, the Plaintiff shows that the allegations in her Complaint bring claims under the FDCPA. Specifically, the Plaintiff highlights that the following set forth allegations of claims under 15 U.S.C. §§ 1692e, 1692f(1), 1692c(b), correlating the factual allegations of the Complaint with the relevant statutory provisions:

- "This is a case about a company's false and misleading accounts that a woman owed debt, the company's conduct of ignoring attempts to rectify the errors and repeated actions and omissions, lasting over a year, in an attempt to collect the alleged debt." Compl. ¶ 1, ECF No. 5; *see* 15 U.S.C. §§ 1692e, 1692f(1), 1692c(b);
- "[The Defendant] falsely represented the legal status of the debt and attempted to collect an amount of money from [the Plaintiff] that is not permitted by law." Compl. ¶ 61; *see* 15 U.S.C. § 1692f(1);
- "[The Defendant's] conduct was unfair, along with [its] omissions." Compl. ¶ 67; *see* 15 U.S.C. § 1692f(1);
- "[The Defendant] communicated with CRAs when such communication was illegal." Compl. ¶ 68; *see* 15 U.S.C. §§ 1692e(8), 1692c(b);
- "[The Defendant] made false, deceptive and misleading representations and deceptive means when [it] falsely represented [the Plaintiff] owed money, communicated information to consumer reporting agencies that they knew to be false and incomplete, and falsely represented debt was owed to [the Defendant]." Compl. ¶ 72; *see* 15 U.S.C. § 1692e;
- "The alleged debt [the Defendant] attempted to collect was not authorized by any agreement or permitted by law." Compl. ¶ 73; *see* 15 U.S.C. § 1692f(1);
- "Any obligation that [the Plaintiff] would have incurred to pay money would have arisen out of a transaction that was solely or primarily for a personal, family, or household purpose." Compl. ¶ 76; *see* 15 U.S.C. § 1692a(5); and
- "NCS is a 'debt collector' as defined by 15 U.S.C. § 1692a(6)." Compl. ¶ 106; *see* Compl. ¶ 78–85; 103–105; 15 U.S.C. § 1692a(6).

Thus, the Court denies the Defendant's Motion to Strike. Nevertheless, in the interest of justice and judicial economy, the Court grants the Defendant's request to be given an opportunity to file a motion for summary judgment on the Plaintiff's FDCPA claims. The Court sets a deadline of March 17, 2025, for the Defendant to file a motion for summary judgment on the Plaintiff's FDCPA claims.

## CONCLUSION

For the above reasons, the Court hereby GRANTS the Defendant's Motion to Seal Confidential Contract [ECF 96]. The Court DIRECTS the Clerk of Court to place on the docket the redacted exhibit which is currently found at ECF No. 96-1. The Court DIRECTS the Clerk of Court to maintain Exhibit 4 at ECF No. 92 under seal.

The Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 78] in favor of the Defendant and against the Plaintiff, as to the Plaintiff's Fair Credit Reporting Act claim under 15 U.S.C. § 1681s-2.

The Court DENIES the Plaintiff's Motion for Partial Summary Judgment [ECF No. 77]. Her claims under the Fair Debt Collection Practices Act (FDCPA) under 15 U.S.C. § 1692e(2)(A), 15 U.S.C. §1692e(8), 15 U.S.C. § 1692f(1), and 15 U.S.C. § 1692c(b) remain pending.

The Court DENIES the Defendant's Motion to Strike Portions of Plaintiff's Motion for Summary Judgment [ECF No. 82]. The Court sets a deadline of **March 17, 2024**, for the Defendant to file a motion for summary judgment on the Plaintiff's remaining FDCPA claims.

SO ORDERED on February 24, 2025.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT