**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

ERIN LIVESAY,

    Plaintiff,

    v.           CAUSE NO.: 4:22-CV-19-TLS

NATIONAL CREDIT SYSTEMS, INC.,

    Defendant.

## OPINION AND ORDER

This case arises out of credit reporting and debt collection activities by the Defendant National Credit Systems, Inc. related to the Housing Agreement that the Plaintiff Erin Livesay signed with Copper Beech Townhome Communities Eight, LLC while a student at Purdue University. This matter is now before the Court on the Defendant's Motion for Summary Judgment as to Claim Under Fair Debt Collection Practices Act [ECF No. 106] filed on March 17, 2025, which is fully briefed and ripe for ruling. For the reasons set forth below, the Court grants the Motion.

## PROCEDURAL BACKGROUND

On January 1, 2022, the Plaintiff filed a Complaint in the Tippecanoe County, Indiana, Circuit Court, which the Defendant removed to this federal court on March 7, 2022. ECF Nos. 1, 5. In her Complaint, the Plaintiff alleges that the Defendant inaccurately reported that she owed $5,318.00 to Credit Reporting Agencies (CRAs) Experian, Equifax, and TransUnion, which she disputed with supporting documentation to each of the CRAs in April 2021, July 2021, and September 2021, and that the CRAs notified the Defendant about her disputes through automated consumer dispute verifications (ACDVs). Compl. ¶¶ 6–11, 20–22, 32–34.

She also alleges that the Defendant did not conduct a reasonable investigation in response to each of the disputes. *Id*. ¶¶ 16, 27, 39. She claims that the Defendant did not review the relevant information that she provided. *Id*. ¶¶ 17, 28, 40. She also claims that, at the time of each dispute, she did not owe anything on the account to the Defendant. *Id*. ¶¶ 15, 26, 38. She further alleges that the Defendant failed to report to the CRAs that the reporting was inaccurate or incomplete. *Id*. ¶¶ 18, 29, 41.

As a result, the Plaintiff alleges that the Defendant falsely represented the legal status of the debt and attempted to collect an amount of money from the Plaintiff that is not permitted by law. *Id*. ¶ 61. She contends that the Defendant's conduct was unfair. *Id*. ¶ 67. She also contends that the Defendant communicated with CRAs when the communication was illegal. *Id*. ¶ 68. She alleges that the Defendant made false, deceptive, and misleading representations when it falsely represented the Plaintiff owed money, communicated information to CRAs that the Defendant knew to be false and incomplete, and falsely represented debt was owed to the Defendant. *Id*. ¶ 72. And the alleged debt that the Defendant attempted to collect was not authorized by any agreement or permitted by law. *Id*. ¶ 73.

On October 12, 2023, the Plaintiff filed a Motion for Partial Summary Judgment [ECF No. 77], requesting summary judgment as to her Fair Debt Collection Practices Act (FDCPA) claim and as to her Fair Credit Reporting Act (FCRA) claim on the issue that the Defendant's reporting to the CRAs was inaccurate and incomplete. The Defendant filed a response [ECF No. 93], and the Plaintiff filed a reply [ECF No. 97].

Also on October 12, 2023, the Defendant filed a Motion for Summary Judgment [ECF No. 78], requesting summary judgment as to the Plaintiff's FCRA claim. The Plaintiff filed a response [ECF No. 87], and the Defendant filed a reply [ECF No. 98].

On November 7, 2023, the Defendant filed a Motion to Strike Portions of Plaintiff's Motion for Summary Judgment [ECF No. 82], requesting among other things an extension of time to file a motion for summary judgment as to the Plaintiff's FDCPA claims. The Plaintiff filed a response [ECF No. 85], and the Defendant filed a reply [ECF No. 86].

On February 24, 2025, the Court entered an Opinion and Order [ECF No. 104], denying the Plaintiff's Motion for Partial Summary Judgment. The Court also granted the Defendant's Motion for Summary Judgment as to the FCRA claim, clarifying that the claim under the FDCPA remains pending. The Court additionally granted the Defendant an extension of time to file a motion for summary judgment on the Plaintiff's remaining FDCPA claim by March 17, 2025.

On March 17, 2025, the Defendant filed the instant Motion for Summary Judgment as to Claim Under Fair Debt Collection Practices Act [ECF No. 106], requesting summary judgment as to the Plaintiff's remaining FDCPA claim. The Plaintiff filed a response [ECF No. 110], and the Defendant filed a reply [ECF No. 118].

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing

3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## BACKGROUND AND MATERIAL FACTS[1]

### A.     The Parties, the Housing Agreement, and the Alleged Debt

The Plaintiff, Erin Livesay, signed a Housing Agreement with Copper Beech Townhome Communities Eight LLC (Copper Beech) on October 22, 2018, to rent an apartment she had hoped to live in with roommates while she attended Purdue University. ECF No. 80-2, p. 3; ECF No. 110-2, ¶ 1.[2] Under the Housing Agreement, Copper Beech would provide a residence to the Plaintiff, and she would pay $439.00 monthly. ECF No. 80-2, p. 3. Its term was from August 17, 2019, through August 2, 2020, and the Plaintiff's total for rent was $5,268.00, plus an administrative fee of $50.00 for a total of $5,318.00. *Id.*

The Housing Agreement also required the Plaintiff to make a prepayment of the final two-month's payments—totaling $878.00—before moving in. *Id.* Alternatively, it waived that

---

[1] The Court disregards substantive arguments and characterization of evidence in the fact statements and considers the facts only as supported by the cited evidence of record. To the extent that, in her response brief, the Plaintiff objects to some of the Defendant's evidence, the Court need not address the objections because the Court resolves the Defendant's instant Motion for Summary Judgment without relying on that evidence.

[2] In the instant summary judgment brief, *see* Def. Summ. J. Br., ECF No. 106-1, the Defendant refers to exhibits filed with its first motion for summary judgment, *see* ECF No. 78. Also, because the parties did not label all their exhibits and the Plaintiff filed her exhibits over multiple docket entries, *see* ECF Nos. 80, 81, 110, 117, without numbering the exhibits sequentially, the Court refers to the parties' exhibits by their ECF number.

payment if she had a guarantor sign the Housing Agreement. *Id.* However, the Plaintiff did not

make that $878.00 pre-payment, and she did not have a "guarantor that Copper Beech deemed

acceptable." ECF No. 78-5, pp. 82–83; ECF No. 110-2, ¶ 5. Copper Beech refused to allow her

to move in. ECF No. 110-2, ¶ 3.

      With no payments from the Plaintiff, Copper Beech placed her account with the

Defendant, National Credit Systems, Inc. (NCS)—a third-party debt collector that collects debts

from parties who allegedly breached lease agreements, for collection. ECF No. 78-13, ¶¶ 4, 11–

12; ECF No. 105 (Service Agreement between the Defendant and Copper Beech).[3] The

Defendant reported the Plaintiff's alleged debt to Copper Beech to consumer reporting agencies

(CRAs). *See, e.g.*, ECF No. 81-15, p. NCS417. CRAs include Experian, Equifax, and

TransUnion. ECF No. 78-13, ¶ 3. The Defendant receives indirect disputes made to the CRAs by

consumers, such as the Plaintiff, known as automated consumer dispute verifications (ACDVs),

through the Metro2 e-Oscar system used by the CRAs. *Id.*

**B.**     **Pre-Judgment Communication**

      As for the communications in this case, on July 7, 2020, the Defendant received a dispute

letter dated June 26, 2020, directly from the Plaintiff that recounted her dealings with Copper

Beech. ECF No. 78-6. Among other things, that letter stated as follows:

> I did not sign a LEASE agreement nor do I have any copies that were sent to me
> via email or emails containing a confirmation that I signed a lease or housing
> agreement at that time (a copy of the Housing Agreement that I signed was sent to
> me for the first time after requesting it on 6/25/2020) I did not send a "signed
> Guaranty from an acceptable guarantor or prepayment of the final two installments"
> before November 26, 2018. . . .
> . . . I was an unemployed college student at that time, so my only option to
> financially qualify for the apartment was to have a guarantor, which was denied
> because my guarantor did not make 5x the rent. I did not have another guarantor
> option.

---

[3] Ron Sapp, the Defendant's Vice President of Operations, provided a declaration including information
on the Plaintiff's account with the Defendant among other things. ECF No. 78-13, ¶ 2.

*Id.*, pp. 3–4. As a result of receiving that letter, on August 3, 2020, the Defendant then mailed account documentation to the Plaintiff, verifying the alleged $5,318.00 debt to Copper Beech and notifying her that it had investigated the dispute but there was insufficient evidence to validate her claims and attaching Copper Beech's letter with a final account statement, ledger, and the Housing Agreement. ECF No. 78-7, p. 1; ECF No. 81-22, p. 1.

On April 10, 2021, the Plaintiff sent Experian a dispute about the Defendant's credit reporting, and Experian sent the Defendant a corresponding ACDV. ECF No. 80-10; ECF No. 110-2, ¶ 7. In response, on April 27, 2021, the Defendant confirmed the balance and past due amount of $5,318.00. ECF No. 80-11. On June 11, 2021, the Plaintiff sent Experian another dispute about the Defendant's credit reporting, and Experian sent the Defendant a corresponding ACDV. ECF No. 80-13; ECF No. 80-14. In response, on July 7, 2021, the Defendant confirmed the balance and past due amount of $5,318.00. ECF No. 80-14.

## C.   Indiana State Court Lawsuit and the Judgment Against Copper Beech in the Plaintiff's Favor

On May 26, 2021, the Plaintiff sued Copper Beech in Indiana state court in Tippecanoe County for a declaratory judgment that she owed nothing under the Housing Agreement. ECF No. 80-2. After a trial, on July 23, 2021, the Indiana state court rendered a declaratory judgment against Copper Beech and in favor of the Plaintiff that she did not owe the $5,318.00 to Copper Beech. ECF No. 80-1.

## D.   Post-Judgment Communication Based on the Plaintiff's Disputes

On July 23, 2021, the Plaintiff sent a dispute to each of Equifax, Experian, and TransUnion attaching "all of the exhibits [she] gave the Tippecanoe Court and [the] order." ECF No. 110-2, ¶ 11; *see* ECF No. 81-2 (TransUnion); ECF No. 81-7 (Equifax); ECF No. 80-16 (Experian).

6

On July 27, 2021, Equifax created an ACDV, in which it notified the Defendant of the Plaintiff's dispute. ECF No. 81-13, p. 85 (Bates stamp NCS285). In response, on August 20, 2021, the Defendant noted that it updated the account with additional information, included that the balance owed was $5,318.00, and noted that the Plaintiff disputed the current balance and disagrees with the completed investigation. ECF No. 81-8.

On July 30, 2021, Experian sent the Defendant an ACDV, in which it notified the Defendant of the Plaintiff's dispute. ECF No. 80-17. In response, on August 18, 2021, the Defendant confirmed the alleged debt was owed. *Id*. On August 18, 2021, the alleged debt was still reporting on the Plaintiff's Experian credit report. ECF No. 80-18.

On August 23, 2021, the alleged debt was still reporting on the Plaintiff's TransUnion credit report when it was issued to Purdue FCU, ECF No. 81-4, p. 4, and as a result, the Plaintiff was denied a Visa credit card, ECF No. 81-5.

**E.    Post-Judgment Settlement Offer**

On August 5, 2021, the Defendant sent the Plaintiff a settlement offer stating that it was authorized to extend her an offer to resolve her $5,318.00 debt to Copper Beech for 50% of the current balance, which amounted to $2,659.00. ECF No. 110-3. In her declaration, after summarizing these events, the Plaintiff stated, "I felt anxious, exploited, embarrassed, worthless and helpless." ECF No. 110-2, ¶ 24.

ANALYSIS

The Defendant moves for summary judgment on the Plaintiff's remaining claim under the Fair Debt Collection Practices Act (FDCPA).

The Congressional purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State

7

action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Thus, the

FDCPA "is designed to protect consumers from abusive and unfair debt collection practices."

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320 (7th Cir. 2016). Consequently,

the FDCPA, among other things, "restricts whom a debt collector may contact regarding a debt .

. . and bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting

a debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (cleaned up).

 In order to succeed on her FDCPA claim, "[the Plaintiff] must prove that (1) [the

Defendant] qualifies as a 'debt collector,' (2) that [the Defendant] took the actions [she]

complains of 'in connection with the collection of any debt,' and that (3) those actions violated

one of the FDCPA's substantive provisions." *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303,

1311 (7th Cir. 2025) (quoting *Gburek*, 614 F.3d at 384, 387). In this case, the Defendant does not

dispute that it qualifies as a debt collector. Thus, the Plaintiff must offer evidence both that the

Defendant took the actions—in the form of certain communications—that she complains of in

connection with the collection of her alleged debt and that those actions violated one of the

FDCPA's substantive provisions. The communications by the Defendant that are at issue

include: (1) those before the July 23, 2021 declaratory judgment in the Plaintiff's favor; (2) the

August 23, 2021 TransUnion Consumer Report to Purdue Federal Credit Union maintaining the

Defendant's tradeline; (3) two August 2021 responses to ACDVs from CRAs; and (4) the August

5, 2021 settlement offer. The Court addresses each of these communications in turn below

finding that the FDCPA claim does not survive summary judgment because the Plaintiff does not

offer evidence sufficient to establish a genuine dispute of material fact.

**A. Communication by the Defendant Before the July 23, 2021 Declaratory Judgment in the Plaintiff's Favor**

 On July 23, 2021, a state court judgment was entered declaring that the Plaintiff did not

owe Copper Beech the $5,318.00. The record contains the following communications by the

Defendant before that judgment: (1) the Defendant's August 3, 2020 response to the Plaintiff's dispute verifying the alleged $5,318.00 debt to Copper Beech and notifying her that it had investigated the dispute but there was insufficient evidence to validate her claims and attaching Copper Beech's letter with a final account statement, ledger, and the Housing Agreement; (2) the Defendant's April 27, 2021 response to Experian's ACDV confirming the balance and past due amount of $5,318.00; and (3) the Defendant's July 7, 2021 response to Experian's ACDV confirming the balance and past due amount of $5,318.00.[4]

The Defendant contends that these prejudgment communications do not violate the FDCPA because "the FDCPA did not impose a duty upon [the Defendant] to conduct a legal analysis concerning the enforceability of the Housing Agreement." Def. Summ. J. Br. 16, ECF No. 106-1. The Defendant also contends that "[a] debt collector who reasonably relies on the accuracy of a creditor's representation cannot be held liable under the FDCPA if it turns out that the creditor placed the wrong amount." *Id*.

In her response, the Plaintiff mischaracterizes the Defendant's brief, stating that "[the Defendant] offers no evidence or argument that its actions before receiving the state court's judgment against Copper Beech were somehow exempt from the FDCPA . . . ." Pl. Resp. Br. 2, ECF No. 110. She also asserts, "Even though . . . there was no question as to whether [the Plaintiff] had been denied occupancy . . . , [the Defendant] still refused to make any evaluation for itself of the grounds for [the Plaintiff's] disputes. Rather, [the Defendant] blindly accepted

---

[4] In her response brief, the Plaintiff also asserts as another prejudgment dispute her July 23, 2021 dispute that she sent to Experian. *See* Pl. Resp. Br. 10, ECF No. 110 (citing ECF No. 81-7). The Court presumes that this assertion was in error because, aside from the fact that the dispute was sent directly to Experian (not the Defendant) and includes the declaratory judgment, the Plaintiff also attached a declaration to her response brief stating, "On 7/23/21, I sent disputes by certified mail disputing the [Defendant's] credit reporting to Equifax, *Experian* and Trans Union. I included all of the exhibits we gave the Tippecanoe Court order itself." ECF No. 110-2, ¶ 11. Thus, the Court does not include the Plaintiff's July 23, 2021 dispute to Experian as a prejudgment communication with the Defendant.

Copper Beech's position without question." *Id*. 25. According to the Plaintiff, "the law simply does not permit [the Defendant] to evade liability for collecting an unenforceable contract, particularly after it received notice from [the Plaintiff] that she had not ever been allowed to take possession of the rental property." *Id*. 15. The Plaintiff also argues that this notice included "the same factual evidence presented to the Tippecanoe County Court, and which resulted in a finding that [the Plaintiff] never owed that debt. That finding . . . creates a question of fact as to whether [the Defendant] should have known that the debt was invalid." *Id*. 10.

In support, the Plaintiff cites several cases for the proposition that the FDCPA bars the collection of illegal charges by a debt collector: *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493 (7th Cir. 2007); *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433 (2d Cir. 2018); *Snyder v. Finley & Co., L.P.A.*, 37 F.4th 384 (6th Cir. 2022); *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951 (5th Cir. 2024); *Kottler v. Gulf Coast Collection Bureau, Inc.*, 847 Fed. App'x 542 (11th Cir. 2021); *Nance v. Ulferts*, 282 F. Supp. 2d 912 (N.D. Ind. 2003); *Alarcon v. Vital Recovery Servs., Inc.*, No. 15-CV-992, 2019 WL 1577744 (S.D. Cal. Apr. 11, 2019); *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171 (D. Utah 2019); *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103 (E.D.N.Y. 2020); *Persilver v. Merchants Credit Corp.*, No. 2:19-CV-1922, 2020 WL 4582188 (W.D. Wash. Aug. 10, 2020); *Creager v. Columbia Debt Recovery*, 618 F. Supp. 3d 1094 (W.D. Wash. 2022). However, the Plaintiff does not analogize the facts of any of those cases to the instant case. Nor does she quote any of those cases for the proposition asserted. Thus, the Plaintiff has not established that these cases address the issue at hand in this case. Therefore, the Court finds these citations by the Plaintiff unpersuasive.

As to the Plaintiff's argument that the Defendant should have known that the debt was invalid based on the fact that—in her disputes—she notified the Defendant that she was not allowed possession of the rental property, the Plaintiff merely points to the record to establish

that she notified the Defendant that she was not allowed possession. However, the Plaintiff does not point to anything in the record to establish that the Defendant should have known the debt was invalid based on that fact.

To the extent the Plaintiff argues that the Defendant should have known the debt was invalid because "[the Plaintiff's] experience is not unique," Pl. Resp. Br. 25, ECF No. 110 (citing ECF No. 110-7 (Miller declaration)), the Court finds that there is nothing in that conclusory statement to suggest the Defendant should have known the Plaintiff's Housing Agreement was unenforceable (because she was not allowed possession of the rental property) before the July 23, 2021 declaratory judgment. In fact, the Miller declaration, on which the Plaintiff bases that statement, provides: "I never lived in the property for which [the Defendant] was trying to collect rent" and "I mailed the Order of Judgment [declaring that my lease was void] with my dispute to the consumer reporting agencies on *March 3, 2023*," Pl. Ex. 7 ¶¶ 3, 5, ECF No. 110-7 (emphasis added), which was at least a year and half after the Plaintiff's disputes and the declaratory judgment in her case.

And contrary to the Plaintiff's assertion, the FDCPA did not require the Defendant to investigate the legal enforceability of the Housing Agreement between Copper Beech and the Plaintiff before it attempted to collect the $5,318.00 debt from the Plaintiff before the July 23, 2021 declaratory judgment. This is because the Seventh Circuit has interpreted the FDCPA to "read[] that debt collectors are not liable for attempting to collect validly certified amounts owed their client." *Jenkins v. Heintz*, 124 F.3d 824, 833 (7th Cir. 1997). And under the FDCPA, a debt collector is not required "to conduct an independent investigation into the legal intricacies of the client's contract with the consumer." *Id.* at 833–34. Here, the Plaintiff does not dispute that she was liable to Copper Beech for the $5,318.00 *under the terms* of the Housing Agreement. Instead, she disputes the enforceability of those terms, asserts that the Defendant should have

known those terms were unenforceable, and shows that an Indiana state court in Tippecanoe County rendered a declaratory judgment, on July 23, 2021, against Copper Beech and in favor of the Plaintiff that she did not owe the $5,318.00 to Copper Beech. However, although the Plaintiff cites several cases, she does not cite any pertinent legal authority standing for the proposition that—based on the declaratory judgment—the Defendant is liable under the FDCPA for its communication attempting to collect the $5,318.00 *before* there was a declaratory judgment establishing that the Plaintiff did not owe the debt.

Thus, the Court finds that the Plaintiff has not established a genuine dispute of material fact that the Defendant's communication before July 23, 2021, violated the FDCPA. As a result, the Court grants summary judgment in favor of the Defendant on the Plaintiff's FDCPA claim—based on the Defendant's: (1) August 3, 2020 response to the Plaintiff; (2) April 27, 2021 response to Experian's ACDV; and (3) July 7, 2021 response to Experian's ACDV. Consequently, the Court need not address the parties' additional arguments as to these prejudgment communications.

## B.    August 23, 2021 TransUnion Consumer Report to Purdue Federal Credit Union

The record also contains an August 23, 2021 TransUnion consumer report for the Plaintiff provided to Purdue Federal Credit Union that included the Defendant's tradeline stating the Plaintiff owed the $5,318.00 debt to the original creditor Copper Beech. However, the Defendant highlights that "[the Plaintiff] claims that she was denied credit from Purdue Federal Credit Union. These damages naturally relate to her FCRA claims and it is not clear how they relate to the FDCPA claims." Def. Summ. J. Br. 23, ECF No. 106-1.

As noted by the Defendant in its reply brief, the Plaintiff's response brief does not address this argument or offer any response to explain how the Defendant's failure to stop the TransUnion consumer report with the Defendant's tradeline on an earlier date violates a

substantive provision of the FDCPA. As a result, the Court finds that the Plaintiff has waived any argument on the Defendant's failure to stop earlier the August 23, 2021 TransUnion consumer report containing the Defendant's tradeline violating a substantive provision of the FDCPA because the Plaintiff did not develop such an argument. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016). Thus, the Court grants summary judgment in favor of the Defendant on the Plaintiff's FDCPA claim brought on the basis that the Defendant failed to stop the August 23, 2021 TransUnion consumer report because the Plaintiff has not met her burden to establish a violation of a substantive provision of the FDCPA involving the August 23, 2021 TransUnion consumer report. *See Wood*, 126 F.4th at 1311.

**C.      The Defendant's August 2021 Responses to Two ACDVs**

The record additionally contains the following responses by the Defendant to the Plaintiff's disputes received in ACDVs from CRAs Equifax and Experian after the July 23, 2021 judgment declaring that the Plaintiff did not owe Copper Beech the $5,318.00: (1) the August 18, 2021 response to the ACDV from Experian, verifying that the Plaintiff owed the alleged debt; and (2) the August 20, 2021 response to the ACDV from Equifax, verifying that the balance owed by the Plaintiff was $5,318.00. "Under the [FDCPA], only communications 'in connection with the collection of any debt' (*see* 15 U.S.C. § 1692e, 1692g) fall under the ambit of the Act." *Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 388 (7th Cir. 1998); *see Wood*, 126 F.4th at 1311 (quoting *Gburek*, 614 F.3d at 384). Here, the Defendant argues that the Plaintiff cannot meet her burden to show that these two responses by the Defendant to the ACDVs were made in connection the collection of the Plaintiff's debt. *See Wood*, 126 F.4th at 1311. The Plaintiff does not dispute that the Defendant's August 20, 2021 response to the ACDV from Equifax was not in

connection with the collection of a debt. As for the Defendant's August 18, 2021 response to the ACDV from Experian, the Court finds that the response was not in connection with the collection of the alleged debt for the reasons set forth below.

"Neither this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Gburek*, 614 F.3d at 384. The Seventh Circuit has described the court's inquiry "as a 'commonsense inquiry' consisting of several factors, none of which is dispositive." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 467 (7th Cir. 2018) (quoting *Gburek*, 614 F.3d at 384–85). Important factors for courts to consider include whether there is "a demand for payment," "[t]he nature of the parties' relationship," and "the purpose and context of the communications— viewed objectively." *Gburek*, 614 F.3d at 385. But "[t]he key inquiry is to look at the realities of the situation and determine if the specific communication at issue was inducing payment from the debtor." *Ostojich v. Specialized Loan Servicing, LLC*, 618 F. Supp. 3d 778, 788 (N.D. Ill. 2022) (citing *Gburek*, 614 F.3d at 382). This is because "under the case law, it is not enough that a [communication] is part of a broader strategy by the debt collector. The communication itself must attempt to collect the debt, someway somehow. And if it doesn't, it isn't a communication in connection with the collection of a debt." *Id*. at 790.

On the first factor, the Plaintiff does not dispute that there was no demand for payment in the Defendant's response, which weighs in favor of finding that the August 18, 2021 response to the ACDV was not in connection with the collection of the Plaintiff's alleged debt but is not dispositive. *See Gburek*, 614 F.3d at 385 ("The case does not, however, establish a categorical rule that only an explicit demand for payment will qualify as a communication made in connection with the collection of a debt."). On the second factor, the Plaintiff focuses on the relationship between herself and the Defendant; however, the salient relationship is that of the

14

parties to the communication, which were the CRA Experian and the Defendant debt collector. That the Plaintiff was not a party to the communication at issue weighs in favor of finding that the Defendant's August 18, 2021 ACDV response was not in connection with the *collection* of the Plaintiff's alleged debt.

On the third factor, the Court finds that the purpose of the Defendant's August 18, 2021 ACDV response to the CRA was in compliance with the FCRA. As highlighted by the Defendant, "[r]equired responses to disputes are made to comply with the FCRA, not as an attempt to induce payment." Def. Summ. J. Br. 10. ECF No. 106-1 (citing *McIvor v. Credit Control Servs.*, 773 F.3d 909, 915 (8th Cir. 2014)). For under the FRCA, the Plaintiff's direct disputes to the CRA required the CRA to send the Defendant an ACDV. *See* 15 U.S.C. § 1681i(a)(1)(A) ("[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation . . . ."). The Defendant's "receipt of [the] ACDV triggered a statutory obligation [under the FCRA] to 'conduct an investigation with respect to the disputed information.'" *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)). The Defendant was then also required to "report the results of the investigation to [the] [CRA]." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing 15 U.S.C. § 1681s–2(b)).

In *McIvor*, an Eighth Circuit Court of Appeals case cited by the Defendant, the court summarized these FCRA requirements:

> Congress enacted the FCRA to address a "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). It places responsibilities on both consumer reporting agencies and furnishers of information, including debt collectors. *E.g.* 15 U.S.C. §§ 1681i, 1681s–2. When a consumer disputes a debt directly with a reporting agency, as McIvor did, the agency must

within 30 days "conduct a reasonable reinvestigation to determine whether the
disputed information is inaccurate and record the current status of the disputed
information, or delete the item from the file" if it is "found to be inaccurate,
incomplete, or cannot be verified." § 1681i(a)(1)(A), (5)(A). When a furnisher of
information like Credit Control is contacted as part of this reinvestigation process,
it is obligated to "conduct an investigation with respect to the disputed information"
and report the results to the consumer reporting agency. § 1681s–2(b).

773 F.3d at 915.

Here, the Defendant's communication is with a CRA in response to the ACDV verifying

the Plaintiff's debt. The Court finds that although there is no doubt the Defendant's response was

connected to the Plaintiff's alleged debt to Copper Beech, the purpose of the Defendant's

response to the CRA was *compliance* with the FCRA's investigation requirements and not the

*collection* of the alleged debt from the Plaintiff. A claim "related to these investigation

requirements [is to be] brought under the FCRA rather than the FDCPA," *id*. at 916, as a claim

that a data furnisher—such as the Defendant—provided incomplete or inaccurate information to

a CRA, *see Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 776 (7th Cir. 2023). Because

"[t]he FDCPA does not incorporate § 1681s-2 [of the FCRA]," *Evans v. Portfolio Recovery

Assocs., LLC*, 889 F.3d 337, 348 (7th Cir. 2018), a plaintiff cannot avoid the FDCPA

requirement that the communication at issue be made in connection with the collection of the

alleged debt by simply setting forth a communication required by the FCRA, such as the ACDV

at issue here. And the Plaintiff does not cite a single case to show that a claim based on a debt

collector's response to an ACDV was successfully brought under the FDCPA.

Instead, the Plaintiff cites *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir.

2022), for the proposition that "communications with credit bureaus, that should be known to be

false, give rise to a violation of the FDCPA," Pl. Resp. Br. 7–8, ECF No. 110. However, the

Plaintiff overstates the scope of *Ewing* as the plaintiffs in that case alleged a violation of a

specific provision of the FDCPA, 15 U.S.C. § 1692e(8), which provides that a debt collector may

not "fail[] to communicate that a disputed debt is disputed" when the defendant debt collector failed to communicate to the CRAs that the plaintiff disputed the debt. Unlike in *Ewing*, here the communication by the Defendant debt collector to the CRA was in response to an ACDV, which is required by the FCRA, discussed in detail above.

The Plaintiff also cites the Experian deposition related to an ACDV Experian sent to the Defendant on July 7, 2021, *see* ECF No. 80-6, pp. 98–99, for the proposition that "had [the Defendant] simply not responded [to the ACDV], the credit reporting would have been removed as a matter of course." Pl. Resp. Br. 7, ECF No. 110 (citing ECF No. 80-6, p. 99). However, the Plaintiff does not explain, let alone establish with the record, how this means that the objective purpose of the Defendant's communication with Experian was to induce the Plaintiff into paying the Defendant for the Plaintiff's alleged debt to Copper Beech.

What the Plaintiff explains is that "credit reporting as a practice is entirely voluntary on the part of debt collectors and is a [sic] acknowledged in itself to be a method of collection activity." Pl. Resp. Br. 7, ECF No. 110. The Plaintiff is correct in that reporting a debt may very well be a method of debt collection. *See McIvor*, 773 F.3d at 915 (differentiating between communications voluntarily reporting a debt versus communications verifying a debt as required by the FCRA). However, the Plaintiff has not raised an argument on the Defendant's reporting of the Plaintiff's debt to Experian as violating a specific substantive provision of the FDCPA let alone pointed to any such communication in the record. To the extent the Plaintiff points to the fact that the Defendant *maintained* its tradeline on the Plaintiff's Experian consumer report after the July 23, 2021 declaratory judgment, the Plaintiff does not develop an argument on how such conduct violates a substantive portion of the FDCPA with citation to pertinent legal authority.[5]

_____

[5] However, the Plaintiff raises an argument that the Defendant violated 15 U.S.C. §1692c(b) of the FDCPA, citing among other documents the document establishing that the Defendant maintained its tradeline on the Plaintiff's Experian consumer report after the July 23, 2021 declaratory judgment. 15

Thus, the Plaintiff waives any such arguments. *See Mahaffey*, 588 F.3d at 1146; *Citizens for Appropriate Rural Roads*, 815 F.3d at 1078.

Accordingly, the Court finds that the Plaintiff has not shown that there is a genuine dispute of material fact that the Defendant's August 2021 responses to the ACDVs it received from Expedia and Experian were communications in connection with the collection of the Plaintiff's alleged debt. Because the Defendant also argued that the Plaintiff cannot show that these communications were an attempt to collect a debt and the Plaintiff did not address this argument in her response brief, the Court further finds that the Plaintiff has not shown that there is a genuine dispute of material fact that the Defendant's August 2021 responses to the ACDVs it received from Expedia and Experian were attempts to collect the Plaintiff's alleged debt.[6] As a result, the Court grants the Defendant's Motion for Summary Judgment as to the Plaintiff's FDCPA claim based on the Defendant's responses to (1) the August 18, 2021 response to the ACDV from Experian, verifying that the Plaintiff owed the alleged debt and (2) the August 20,

---

U.S.C. §1692c(b) provides that a debt collector is prohibited from communicating "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. §1692c(b). Here, the Plaintiff asserts that the Defendant violated 15 U.S.C. §1692c(b) because the Defendant violated 15 U.S.C. § 1681s-2(a)(1)(B) of the FCRA, which prohibits data furnishers, such as the Defendant, from furnishing information to a CRA when it has been notified by the consumer that the information is inaccurate and the information is in fact inaccurate. *See* 15 U.S.C. § 1681s-2(a)(1)(B). The Plaintiff's theory is that "[h]er disputes to [the Defendant] provided notice that [the Defendant's] credit reporting was inaccurate, and therefore further reporting would be prohibited under the FCRA. Consequently, because the FCRA prohibited further reporting by [the Defendant] after receipt of [her] disputes, that reporting was not 'otherwise permitted' and also violated § 1692c of the FDCPA." Pl. Resp. Br. 18, ECF No. 110. However, the Plaintiff cites no legal authority stating that the FCRA functions in correspondence with her theory. Instead, in support, the Plaintiff merely cites ECF Nos. 80-10, 80-11, 80-13, 80-14, 80-16, 80-17, 80-20, 81-7, and 81-8, which she asserts are "[her] disputes which were received by [the Defendant]." *Id*. She also cites ECF No. 80-12, 80-18, 81-1, and 81-9, which she asserts are the Defendant's "reporting." *Id*. She does not describe the disputes or inaccurate information contained in the cited documents. Nor does she cite any legal authority that supports a finding that such documents violate the FCRA, which then in turn violates §1692c(b) of the FDCPA. Thus, the Court finds that the Plaintiff has waived any such assertions about violating §1692c(b) by violating the FCRA. *See Mahaffey*, 588 F.3d at 1146; *Citizens for Appropriate Rural Roads*, 815 F.3d at 1078.

[6] 15 U.S.C. § 1692f provides, "A debt collector may not use unfair or unconscionable means to collect or *attempt* to collect any debt." 15 U.S.C. § 1692f (emphasis added).

2021 response to the ACDV from Equifax, verifying that the balance owed by the Plaintiff was $5,318.00. Thus, the Court need not address the parties' additional arguments on these responses.

## D.   August 5, 2021 Settlement Offer

The record in this case further contains the August 5, 2021 settlement offer from the Defendant to the Plaintiff offering to settle the alleged $5,318.00 debt with Copper Beech for 50% of the debt or $2,659.00. In her response brief, the Plaintiff's only mention of this settlement offer is in the "Introduction" where she states, "Even after [the Plaintiff] disputed her debt with a copy of the judgment . . . [the Defendant] sent . . . a . . . letter offering to settle the debt." Pl. Resp. Br. 1, ECF No. 110. The Plaintiff does not mention the settlement offer in her analysis of why the Defendant's communications violate a substantive provision of the FDCPA let alone explain how any of the content of the settlement offer violates the FDCPA. As a result, the Court finds that the Plaintiff has not developed any argument on how the settlement offer violates a substantive provision of the FDCPA and, thus, has waived any such argument. *See Mahaffey*, 588 F.3d at 1146; *Citizens for Appropriate Rural Roads*, 815 F.3d at 1078.

The Court notes that, even if the Plaintiff had established that the settlement offer violated a substantive portion of the FDCPA, the Plaintiff would also have to establish Article III standing. "Article III standing requires the party invoking federal jurisdiction to demonstrate that (1) the plaintiff has suffered an injury-in-fact, (2) the injury was caused by the defendant, and (3) the injury is redressable by judicial relief." *Ewing*, 24 F.4th at 1150–51 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Not seeking to remedy any harm to herself but instead [] merely seeking to ensure a defendant's 'compliance with regulatory law

19

(and, of course, to obtain some money via the statutory damages) . . . [is] not grounds for Article III standing." *Id.* at 427–28 (cleaned up). This is because injuries that "caus[e] no real harm" give nothing for the court to remedy. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022). However, "[t]raditional tangible harms, such as physical or monetary harm, easily meet the concreteness requirement." *Ewing*, 24 F.4th at 1151 (citing *TransUnion*, 594 U.S. at 425). And "[i]ntangible harms are concrete if the plaintiff's alleged injury bears a 'close relationship' to the sort of harms traditionally recognized by American courts, such as reputational harm." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)); *see Pierre*, 29 F.4th at 938 (citing *Ewing*, 24 F.4th at 1149–50, 1154).

On the other hand, the Seventh Circuit has found no concrete injury where a debt collector sent the plaintiff a notice demanding payment but did not "specify that any dispute or verification request must be made in writing to trigger certain statutory protections." *Pierre*, 29 F.4th at 938 (citing *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)). The court reasoned that "[t]he failure, though a statutory violation, caused [the plaintiff] no harm. She hadn't even considered disputing or seeking verification of the debt, and the omission deprived her of no benefit. As such, there was nothing for the court to remedy." *Id.* (cleaned up).

Similarly, in *Larkin v. Finance System of Green Bay, Inc.*, there was no concrete injury where the plaintiffs alleged the debt collector's tactics of sending dunning letters admonishing the plaintiffs were deceptive and unconscionable because "[n]either plaintiff paid a debt she did not owe or otherwise acted to her detriment in response to the letter. There was, again, nothing for the court to remedy." *Pierre*, 29 F.4th at 939 (citing *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1063, 1066–67 (7th Cir. 2020)) (cleaned up).

And then in *Pierre v. Midland Credit Mgmt., Inc.*, the court also found no concrete injury where the debt collector sent the plaintiff a letter that she argued "created a risk that she might

make a payment on a time-barred debt, and a payment—or even a promise to pay—risked restarting the limitations period." *Id.* (citation omitted). In *Pierre*, the plaintiff's actual response was to call the debt collector "to dispute the debt and to contact a lawyer for legal advice." *Id.* As to those facts, the court reasoned that they were not "legally cognizable harms." *Id.* Nor were the facts that the "letter confused her as to whether she could be sued for the debt" and "she experienced emotional distress arising from her concern about being sued for the debt" because confusion and worry are "insufficient to confer standing in this context," as "[p]sychological states induced by a debt collector's letter . . . fall short" of a legally cognizable harm. *Id.*

Like in *Larkin* and *Pierre*, here the Plaintiff does not show that she made a payment, promised to settle the debt, or otherwise acted to her detriment in response to anything in the settlement letter from the Defendant. Although she states that she "felt anxious, exploited, embarrassed, worthless and helpless," ECF No. 110-1, p. 3, and, even if the Court presumes that the Plaintiff means that the Defendant's letter induced these psychological states, they are similar to those of the confusion and worry in *Pierre*. Thus, the Court finds the Plaintiff's psychological states fall short of establishing a concrete injury.

Accordingly, the Plaintiff has not established that she "experience[d] a concrete injury giving her standing to pursue claims for money damages in federal court" based on the settlement offer. *Pierre*, 29 F.4th at 940. Consequently, even if the Plaintiff had established a violation of a substantive provision of the FDCPA based on the Defendant's settlement letter, which she has not, the Court would dismiss the Plaintiff's FDCPA claim for a lack of subject matter jurisdiction. *See Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836, 842 (7th Cir. 2003) ("It is true, of course, that a district court may dismiss a case sua sponte for lack of Article III standing if it finds that the plaintiff has not suffered injury-in-fact.").

## CONCLUSION

For these reasons, the Court hereby GRANTS the Defendant's Motion for Summary Judgment as to Claim Under Fair Debt Collection Practices Act [ECF No. 106] in favor of the Defendant and against the Plaintiff as to the Plaintiff's remaining claim under the Fair Debt Collection Practices Act. There are no other pending claims in this action between any parties. The Plaintiff Erin Livesay takes nothing by her Complaint.

There being no claims remaining between any parties, the Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

> Final judgment is entered in favor of the Defendant National Credit Systems, Inc. and against the Plaintiff Erin Livesay, who takes nothing by her Complaint.

SO ORDERED on October 27, 2025.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT